UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RANSFORD PERRY,

                                    Petitioner,                          Case # 23-CV-6521-FPG

v.

                                                                              DECISION AND ORDER

JEFFREY SEARLS,
*in his official capacity as Officer in Charge,*
*Buffalo Federal Detention Facility*,

                                    Respondent.

## INTRODUCTION

*Pro se* Petitioner Ransford Perry has filed a petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2241, ECF No. 1, a motion for a preliminary injunction, a motion for release, and a motion to vacate his final order of removal.  ECF Nos. 3, 14, 21. In addition to seeking release from Respondent's custody, Petitioner seeks an order enjoining Respondent and others from, among other things, denying him adequate medical care, denying him access to the courts, denying him his rights to due process and freedom from cruel and unusual punishment, retaliating against him for First Amendment-protected activities, and enforcing the immigration laws in an arbitrary and discriminatory manner.  *See* ECF No. 3 at 3.   Respondent has moved to dismiss the petition. ECF Nos. 10 (first motion to dismiss), 16 (second motion to dismiss).

As explained below, because Petitioner is no longer in Respondent's physical custody, his petition, motion for a preliminary injunction, and motion for release are moot.   Therefore, Respondent's second motion to dismiss, ECF No. 16, is GRANTED, and Respondent's first motion to dismiss, ECF No. 10, is DENIED as moot.  The petition, ECF No. 1, is DISMISSED, and the motion for a preliminary injunction, ECF No. 3, and motion for release, ECF No. 14 are

DENIED as moot.  Finally, because this Court is without jurisdiction to review a final order of removal, the motion to vacate, ECF No. 21, is DENIED for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    Petitioner's Removal Proceedings

Petitioner is a citizen and native of Jamaica and has been a lawful permanent resident of the United States since May 17, 1996.  ECF No. 10-1 ¶ 5.[1]  In December 2005, Plaintiff was charged with endangering the welfare of a child.  ECF No. 10-2 at 3.  The criminal complaint alleged that he showed a fifteen-year-old boy pornographic material, exposed himself to the child, masturbated in front of the child, and asked the child to engage in oral sex with him.  *Id.*  In 2006, Petitioner pleaded guilty and initially received a sentence of probation.  ECF No. 10-1 ¶ 8. However, after violating the terms of his probation, he was resentenced to a six-month term of incarceration.  *Id.*  In November 2018, Petitioner was issued a notice to appear, alleging that he was subject to removal under Section 237(a)(2)(E)(i) of the Immigration and Nationality Act ("INA") because he had been convicted of a crime of "child abuse, child neglect, or child abandonment."  ECF No. 10-2 at 1–2.  He was also issued a notice of custody determination notifying him that he would remain in ICE custody during his removal proceedings.  ECF No. 10-1 ¶ 11.  An Immigration Judge ("IJ") ordered Petitioner removed to Jamaica on October 4, 2019. ECF No. 10-1 ¶ 15.  Petitioner appealed, and the Board of Immigration Appeals ("BIA") denied his appeal on January 31, 2020.  *Id.* ¶ 16–17.

While in removal proceedings in 2019, Petitioner filed a habeas corpus petition in the District Court for the Southern District of Texas, alleging that his detention was unconstitutional and that he should be released due to inadequate medical care in ICE custody.  ECF No. 10-1 ¶ 18. The Southern District of Texas dismissed his habeas petition, concluding that he had failed to state

---

[1] Unless otherwise noted, the facts related to Petitioner's detention are drawn from the declaration of Deportation Office Trevor Secore and accompanying exhibits.  ECF No. 10-1.

a constitutional claim with respect to his claim of inadequate medical care.  *Id.* ¶ 20.  The court also denied Petitioner's motion for immediate release.  *Id.*

Petitioner continued to litigate his removal, filing a petition for review ("PFR") and a motion for a stay of removal in the Court of Appeals for the Fifth Circuit.  *Id.* ¶ 22.  The court dismissed the PFR on May 5, 2020 and denied the motion for a stay on June 4, 2020.  *Id.* ¶¶ 26–27.  He also filed a motion to reconsider with the BIA, which the BIA denied on June 15, 2020.  *Id.* ¶ 23.  Petitioner subsequently filed a second PFR and stay motion.  *Id.* ¶ 28.  The court denied his motion for a stay on July 23, 2020.  *Id.* ¶ 29.  The court denied his second PFR on October 22, 2021.  *Id.* ¶ 33.

Petitioner remained in custody throughout his proceedings until November 19, 2020, when he was released from ICE custody under the Alternatives to Detention ("ATD") program.  *Id.* ¶ 31.  Under the terms of his release, Petitioner was required to report to ICE for removal and could not commit any further crimes.  *Id.*  However, on June 29, 2023, Petitioner was indicted for multiple sex offenses, as well as endangering the welfare of a child, arising out of a February 24, 2023 incident with a thirteen-year-old child.  *Id.* ¶ 36.  Shortly thereafter, an immigration detainer was issued to the Rensselaer County Sheriff's Office.  *Id.* ¶ 37.

ICE revoked Petitioner's supervised release because of his arrest and indictment on July 27, 2023, and he was again taken into ICE custody.  *Id.* ¶ 38.  ICE then requested travel documents from the Embassy of Jamaica to facilitate Petitioner's removal.  *Id.* ¶ 39.  In September, the Embassy informed ICE that it would not accept the December 2020 travel document issued by the Consulate of Jamaica as confirmation of Petitioner's nationality.  *Id.* ¶ 41.  Accordingly, ICE requested Petitioner's birth records from the Jamaican government.  *Id.* ¶ 42.  That request remains pending.  *Id.*  In the meantime, the Department of Homeland Security ("DHS") "continues to

communicate with the Embassy of Jamaica and is working to remove Petitioner to Jamaica in the reasonably foreseeable future." *Id.* ¶ 44.

## II.     Petitioner's Experience in Respondent's Custody

Petitioner has been detained at the Buffalo Federal Detention Facility ("BFDF") since July 2023. ECF No. 3 at 7.[2]  Because of his diabetes, he is "unable to wear regular socks, and must wear specially prescribed 'diabetic socks.'" *Id.*  However, he has not been provided with diabetic socks while detained at BFDF. *Id.*  From July 2023 to October 2023, he was instead permitted to wear "shower shoes" or "slippers." *Id.* at 7-8.  Moreover, because he was unable to propel his own wheelchair, other detainees were permitted to "voluntarily push [him] to the law library, his medical appointments, and [anywhere else] required . . . within the housing unit or the BFDF." *Id.* at 8.

On September 12, 2023, Petitioner filed a habeas corpus petition pursuant to 28 U.S.C. § 2241, which remains pending.  ECF No. 1.  On October 2, 2023, Petitioner was informed that he "could no longer wear shower shoes outside the housing unit" and that he "must push himself" in his wheelchair, ostensibly for the safety of Petitioner and other detainees.  ECF No. 3 at 8.  As a result of these restrictions, Petitioner has not been able to access the law library, his medical appointments, and other activities. *Id.*  Instead, he is "now almost entirely confined to his cell." *Id.*  On the same day, an external medical appointment was cancelled because he could not be transported without wearing "regular socks and shoes" and because he needed to move himself to the unit where he would be prepared for transport. *Id.*

Later that day, a nurse visited Petitioner to deliver his medication. *Id.*  However, no one delivered his medication the next day, and he ultimately missed all of his medication appointments that day. *Id.*  According to Petitioner, his legs are now inflamed as a result. *Id.*  On October 4,

---

[2] The facts related to Petitioner's allegations related to the conditions of his confinement are drawn from Petitioner's motion for a temporary restraining order and preliminary injunction, ECF No. 3.

2023, Petitioner was again permitted to receive assistance to travel to the medical unit. *Id.* Later that day, however, he was informed that he would need to move independently when outside of the housing unit. *Id.* at 8–9. He alleges that another detainee has been permitted to wear shower shoes after a medical procedure that caused damage to his feet. *Id.* at 9.

On October 20, 2023, Petitioner filed a letter raising additional issues regarding his medical treatment at BFDF. ECF No. 4. In particular, he points to several inaccurate statements in his medical records, which he attached as exhibits to his letter. *Id.* For example, he notes that a cardiologist's report incorrectly refers to him as a female and states that he smokes, drinks, and uses drugs daily. *Id.* at 2. Another physician's report states that Petitioner reported that he had been shot, which Petitioner denies. *Id.* Finally, he states that, although a BFDF nurse indicated that he has atherosclerotic heart disease, his medical providers have never discussed this condition with him. *Id.*

He also alleges that he has been denied access to the BFDF law library, and that a set of documents sent under his name "were never processed" and appear to have "simply disappeared." *Id.* at 9. He further identifies several other ways in which the law library is allegedly inadequate in light of the growing number of detainees held at BFDF. *See id.* at 60.

On October 16, 2023, Petitioner moved for a temporary restraining order and preliminary injunction enjoining BFDF officials from denying him access to adequate medical care, or to the courts, retaliating against him for his First Amendment activities, and enforcing the immigration laws in an arbitrary and discriminatory manner. ECF No. 3 at 3. The Court denied his motion for a temporary restraining order, ECF No. 5, but his motion for a preliminary injunction remains pending. He also seeks immediate release from Respondent's custody. *Id.* at 68–69; *see also* ECF No. 1.

Respondent denies Petitioner's allegations regarding his conditions of confinement both with respect to his medical treatment and his access to the law library. *See* ECF No. 10-3 (BFDF records indicating that Petitioner used law library throughout summer and fall of 2023); ECF No. 10-4 ¶ 9 (declaration of Assistant Field Office Director Peter Sukmanowksi describing BFDF's healthcare services). Respondent has also submitted under seal a declaration of Alberado Montalvo, M.D., in which Dr. Montalvo states that Petitioner has received frequent care from BFDF medical personnel, but often refuses treatment and medication. Certain conditions, such as Petitioner's cataracts, have also been evaluated by external physicians. Respondent has filed voluminous medical records detailing Petitioner's care, and his refusal of care in support of Dr. Montalvo's declaration.

### III.   Petitioner's Transfer to State Custody

On February 14, 2024, while Petitioner's appeal was pending, Rensselaer County Court Judge Jennifer G. Sober issued a writ of production, ordering DHS to deliver Petitioner to the Rensselaer County Sheriff's Department ("RCSD") to be sentenced for attempted sexual abuse in the first degree. ECF No. 16 ¶ 5; ECF No. 16-2 at 1. Pursuant to that writ, Petitioner was remanded to RCSD custody to be transferred to serve his state criminal sentence. *Id.* DHS transferred Petitioner to RCSD custody on February 27, 2024. *Id.* ¶ 6. DHS issued an immigration detainer against Petitioner, requesting that RCSD notify DHS at least 48 hours before Petitioner's release from RCSD custody. ECF No. 16-3. The New York State Department of Corrections and Community Supervision ("DOCCS") took custody of Petitioner on March 4, 2024. ECF No. 16-4. As of April 19, 2024, Petitioner was serving his sentence at Ulster Correctional Facility. *Id.* His earliest release date is October 10, 2025. *Id.*

### IV.     The Habeas Proceedings and Petitioner's Appeal

Petitioner filed the petition in September 2023 and a motion for a temporary restraining order and a preliminary injunction about one month later.  ECF Nos. 1, 3.  The Court denied the motion for a temporary restraining order on October 20, 2023 and set a briefing schedule on the petition and motion for a preliminary injunction.  ECF No. 5.  Respondent filed a motion to dismiss on November 20, 2023.  ECF No. 10.

After Respondent filed his first motion to dismiss, Petitioner filed a notice of appeal.  ECF No. 12.  He also filed a motion for release in this Court.  ECF No. 14.  Petitioner's appeal remained pending until April 18, 2024, when the Second Circuit dismissed the appeal after determining *sua sponte* that it lacked jurisdiction over the appeal "because a final order has not been issued by the district court as contemplated by 28 U.S.C. § 1291 and the denial of a temporary restraining order is not appealable."  Motion Order, *Perry v. Searls*, No. 23-7879, ECF No. 35 (2d Cir. Apr. 14, 2024).  It also denied Petitioner's several motions as moot.  *Id.*

The day after the Second Circuit dismissed Petitioner's appeal, Respondent filed a second motion to dismiss, arguing that the petition became moot upon Petitioner's transfer to state custody.  ECF No. 16.

The Second Circuit issued the mandate on June 25, 2024.  ECF No. 22.

## LEGAL STANDARDS

### I.     Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Courts analyze motions to dismiss for mootness under Rule 12(b)(1) because mootness

implicates the Court's subject matter jurisdiction. *See Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action." (internal quotation marks omitted))

The Second Circuit has distinguished between two types of Rule 12(b)(1) motions: facial motions and fact-based motions. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). A facial motion is based "solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. In evaluating a fact-based motion, on the other hand, a court may assess evidence beyond the complaint and its exhibits. *Id.* at 57. Where the moving party has provided such evidence, the non-moving party must "come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in [their pleadings] if the evidence proffered by [the moving party] is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (quoting *Carter*, 822 F.3d at 57). If the moving party supports its fact-based motion with "material and controverted" "extrinsic evidence," a district court "will need to make findings of fact in aid of its decision" as to subject matter jurisdiction. *Carter*, 822 F.3d at 57.

## II.    Mootness

Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" thereby limiting "the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). A case ceases to be a case or controversy, that is, becomes moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). This is the case "n[o] matter how vehemently the parties

continue to dispute the lawfulness of the conduct that precipitated the lawsuit." *Id.* But, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). "The party seeking to have the case dismissed bears the burden of demonstrating mootness, and that burden is a heavy one." *Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 590 (S.D.N.Y. 2017).

## DISCUSSION

Respondent has filed two motions to dismiss the petition. In the first, Respondent argues that the petition is premature and that Petitioner has failed to demonstrate that his removal is not significantly likely in the reasonably foreseeable future. He also argues that Petitioner has failed to state a claim with respect to his conditions of confinement. In the second, he argues that the petition is moot because Petitioner is no longer in his custody.

Petitioner seeks his release, as well as a preliminary injunction to enjoin Respondent and others from, among other things, denying him adequate medical care, denying him access to the courts, and retaliating against him for First Amendment-protected activities. In his motion to vacate, Petitioner argues that his final order of removal is invalid because his arrest, detention, and processing for removal are unconstitutional.

As explained below, although Petitioner may remain in immigration custody by virtue of his final order of removal, his petition and the associated motions are nevertheless moot. As to his motion to vacate, the Court lacks subject matter jurisdiction over the claims it raises. [3]

---

[3] To the extent that the notice of appeal divested this Court of jurisdiction, the issuance of the mandate returned it. *United States v. Rogers*, 101 F.3d 247, 251 (2d Cir. 1996) ("A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals."); Fed. R. App. P. 41(c) ("The mandate is effective when issued."); *see also Rogers*, 101 F.3d at 251 (collecting cases for proposition that a notice of appeal from a non-final or otherwise non-appealable order does not deprive the district court of jurisdiction).

I.      The Petition

In the second motion to dismiss, Respondent asserts that the Court lacks subject matter jurisdiction because Petitioner's transfer to state custody has rendered his petition and the associated motions moot.  Petitioner argues that the petition is not moot because he remains in custody because of the immigration detainer lodged against him.  As explained below, the Court agrees with Respondent.

"A jurisdictional prerequisite for the granting of a writ of habeas corpus under 28 U.S.C. § 2241 is that the petitioner be 'in custody.'" *Simmonds v. I.N.S.*, 326 F.3d 351, 354 (2d Cir. 2003). "[C]ourts have long recognized that the writ is available to those who, although not actually imprisoned, suffer such a curtailment of liberty as to render them 'in custody.'" *Id.* (citing *Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963)).  In *Simmonds*, the Second Circuit declined to determine whether an immigration detainer alone established custody for the purposes of § 2241, but held that "a final order of removal is sufficient, by itself, to establish the requisite custody." *Id.*  Accordingly, the Court must determine whether his final order of removal establishes that he remains in immigration custody such that his petition is not moot.

Notwithstanding *Simmonds*, courts in this district have continued to dismiss petitions as moot where the petitioner is subject to a final order of removal but is no longer in the physical custody of ICE or DHS.  *See, e.g.*, *Mtola v. Sessions*, No. 16-CV-987, 2018 WL 11449674, at *1 (W.D.N.Y. Oct. 12, 2018) (concluding that petition was moot after petitioner transferred from DHS custody to Bureau of Prisons custody); *Salomon v. Bureau of Immigr. & Customs Enf't*, No. 06-CV-258, 2006 U.S. Dist. LEXIS 77677, at *2–6 (W.D.N.Y. Sept. 19, 2006) (concluding that petition was moot after petitioner transferred from ICE custody to state custody and subsequent release to state parole), *report and recommendation adopted sub. nom. Reginald v. Bureau of Immigr. & Customs Enf't,* No. 06-CV-258, 2006 U.S. Dist. LEXIS 77682 (W.D.N.Y. Oct. 16,

2006).  This approach finds support in a summary order in which the Second Circuit concluded that the petition became moot after ICE released the petitioner, even though he was subject to a final order of removal, and that no exception to the mootness doctrine applied.  *See Leybinsky v. U.S. Immigr.  & Customs Enf't*, 553 F. App'x 108, 108–10 (2d Cir. 2014) (summary order).

The Court agrees with Respondent that, because it seeks release from Respondent's custody at BFDF, the petition is moot.  Even if, under *Simmonds*, Petitioner's final order of removal means that he is in immigration custody for the purposes of § 2241, the Court is persuaded that the parties no longer have a legally cognizable interest in the outcome.  *See Already*, 568 U.S. at 91; *see also Mtola*, 2018 WL 11449674 at *1–2.  "To avoid mootness, 'throughout the litigation, the [petitioner] must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision.'"  *Leybinsky*, 553 F. App'x at 109 (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).  Here, nothing would change if the Court entered an order in favor of Petitioner.  He would remain in DOCCS custody for the duration of his state sentence and would continue to be subject to the final order of removal.  Nothing about a favorable decision would redress Petitioner's alleged unconstitutionally prolonged detention.  *See Leybinksy*, 553 F. App'x at 109.  And, even if Petitioner were to come into Respondent's custody once more upon his release from DOCCS, that would be "a consequence of his final order of removal, not of his most recent detention."  *Leybinsky*, 553 F. App'x at 109; *see* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the [noncitizen].").  The Court therefore concludes that Petitioner's challenge to the length of his detention under 8 U.S.C. § 1231 is moot.

Petitioner's challenges to the conditions of his confinement, including his request for injunctive relief are likewise moot.  Conditions of confinement claims relating to one facility become moot once the petitioner has been transferred to a different facility.  *Lojo v. Garland*, No.

22-CV-6340, 2023 WL 2867791, at *5 (W.D.N.Y. Apr. 10, 2023) (citing *Razzoli v. Strada*, No. 10-CV-4802, 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013)); *see also Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (transfer from state facility to federal facility rendered claim challenging state-facility conditions of confinement moot).  A detainee's transfer to a different facility also "generally moots a request for injunctive relief against employees of the transferor facility." *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002).  Accordingly, to the extent the petition raises a conditions-of-confinement claim it is moot, as is his preliminary injunction to the extent that it seeks relief addressed to those conditions.

However, "even where a [detainee's transfer] would otherwise render a petition moot," the mootness inquiry "may nonetheless be subject to potentially applicable exceptions to the mootness doctrine." *Hubacek v. Holder*, No. 13-CV-1085, 2014 WL 1096949, at *2 (W.D.N.Y. Mar. 19, 2014).  A court should therefore decline to dismiss a habeas petition as moot if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Id.* (quoting *Farez-Espinoza v. Napolitano*, No. 08 Civ. 11060, 2009 WL 1118098, at *5 (S.D.N.Y. Apr. 27, 2009)).  Although Petitioner has not raised any of these exceptions to the mootness doctrine, the Court will consider them in light of his *pro se* status.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'").

The Court first considers whether "collateral injuries" survive Petitioner's transfer to state custody.  In his petition, Petitioner sought "immediate release" from BFDF.  *See* ECF No. 1 at 10; ECF No. 3 at 68.  He has not identified a collateral consequence of that detention "that might represent a 'concrete and continuing injury'" following his transfer to state custody.  *Li v.*

*Shanahan*, 2016 WL 7077110, at *3 (S.D.N.Y. Oct. 25, 2016); *see also So v. Reno*, 251 F. Supp. 2d 1112, 1115 (E.D.N.Y. 2003) (distinguishing a challenge to continued detention, which was moot following deportation from a challenge to the validity of a final order of removal, which was not moot because of the order's "potentially lifelong collateral consequences"). This exception to the mootness doctrine therefore does not apply.

The Court also concludes that the challenged conduct is not capable of repetition yet evading review. In order to invoke this exception, "two circumstances [must be] simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party will be subjected to the same action again." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990) (internal quotation marks and brackets omitted). "The capable-of-repetition doctrine apples only in exceptional situations." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). This is not one of them. Petitioner's detention is not "the sort of action which, by reason of the inherently short duration of the opportunity for remedy, is likely forever to 'evade review.'" *Lewis*, 494 U.S. at 481. If, following his release from DOCCS in 2025, immigration authorities detain him for an allegedly unreasonable period, there will be ample time to obtain judicial review. *See id*. at 482.; *see also Mtola*, 2018 WL 11449674, at *1, *1 n.1 (concluding that petitioner's transfer to Bureau of Prisons mooted petition and citing *Leybinsky*, 553 F. App'x at 108, for proposition that capable-of-repetition exception did not apply).

Nor does the "voluntary cessation" exception save the petition from mootness. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted). "Were it otherwise, 'courts would be compelled to leave the defendant free to return to his old

ways.'" *Farez-Espinoza v. Napolitano*, No. 08 Civ. 11060, 2009 WL 1118098, at *4 (S.D.N.Y. Apr. 27, 2009) (quoting *Friends of the Earth*, 528 U.S. at 189).  This exception "aims to eliminate the incentive for a defendant to strategically alter its conduct in order to prevent or undo a ruling adverse to its interest." *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006); *see Hubacek*, 2014 WL 1094949, at *2.

Here, there is no indication that Respondent permitted DOCCS to take custody of Petitioner for the purpose of preventing this Court's review of Petitioner's detention at BFDF.  Nor would a favorable ruling permit Respondent to engage in the challenged conduct once again.  "The law is clear that while [Petitioner] is still serving his state sentence, the Attorney General is under no obligation to execute a [removal] order." *Duamutef v. I.N.S.*, 172, 179 (2d Cir. 2004).  In fact, it is not clear from this record that Respondent could change course and detain Petitioner for the purposes of removal now that he has been sentenced to imprisonment in New York.  Under 8 U.S.C. § 1321(a)(4)(A), the government is generally prohibited from removing a noncitizen sentenced to imprisonment until he is released.  *See* 8 U.S.C. § 1231(a)(4)(A).  And, there is nothing in the record to indicate that the exception for state prisoners, which requires a state official to determine that removal is "appropriate and in the best interest of the State" and to submit a written request that the noncitizen be removed, *id.* § 1231(a)(4)(B)(ii), applies to Petitioner.

Respondent transferred Petitioner to state custody to facilitate his sentencing in state court. After the state court imposed a term of imprisonment, Petitioner entered the custody of DOCCS. Nothing about this sequence of events suggests that Respondent "strategically altered [his] conduct" in the face of the petition. *DuPont*, 473 F.3d at 47; *see Hubacek*, 2014 WL 1094949, at *2.  And, because there is no indication that DHS or ICE can pursue Petitioner's removal at this time, dismissing the petition would not simply allow Respondent to detain Petitioner once more. *Cf. Farez-Espinoza*, 2009 WL 118098, at *7 (voluntary cessation exception applied where

petitioner released on bond because government arguably had statutory authority to revoke bond and re-detain her).  The voluntary cessation exception therefore does not apply.

Finally, this is not a class action.  That exception is therefore irrelevant.  *See Hubacek*, 2014 WL 1096949, at *3.

Because the parties lack a legally cognizable interest in the outcome and no exception to the mootness doctrine applies, the petition is moot.  The Court therefore dismisses the petition for lack of subject matter jurisdiction.  Petitioner's motion for a preliminary injunction and motion for release are also denied as moot.

### II.    Motion to Vacate

Petitioner has also filed a motion to vacate his final order of removal.  That motion is denied for lack of subject matter jurisdiction.

When a noncitizen "seeks review of a final order of removal, regardless of how the claim for relief is styled, jurisdiction rests exclusively with the appropriate court of appeals." *Sigal v. Searls*, No. 18-CV-00389, 2018 WL 5831326, at *8 (W.D.N.Y. Nov. 7, 2018) (quoting *Scott v. Napolitano*, 618 F. Supp. 2d 186, 191 (E.D.N.Y. 2009)) (ellipsis omitted); *see also* 8 U.S.C. § 1252(a)(5); *see also Lainez v. McHenry*, 809 F. App'x. 40, 41 (2d Cir. 2020) (summary order) ("District courts generally lack jurisdiction to entertain a direct or indirect attack on a removal order.").  "[A] suit brought against immigration authorities is not *per* se a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 642 F.3d 52, 55 (2d Cir. 2011).

Because Petitioner expressly seeks an order vacating his final order of removal, this Court is without jurisdiction over his motion to vacate.  In his motion, Petitioner requests that the Court order DHS and ICE to "dismiss all charges associated with [his] immigration case" because DHS and ICE do not have the constitutional authority to detain him.  *See* ECF No. 21 ¶ 8.  He also

appears to argue that because his "arrest, detention, and processing for deportation" are unconstitutional, his final order of removal is "void," "unenforceable," and "unlawful." ECF No. 21 at 10. In doing so, Petitioner directly challenges his final order of removal; therefore this Court does not have jurisdiction to hear this claim. *See* 8 U.S.C. § 1252(a)(5); *Delgado*, 642 F.3d at 55.

Petitioner's motion to vacate is therefore denied.

## CONCLUSION

For the foregoing reasons, Respondent's second motion to dismiss, ECF No. 16, is GRANTED and the petition, ECF No. 1, is DISMISSED as moot. Petitioner's motion for a preliminary injunction, ECF No. 3, and motion for release, ECF No. 14, are also DENIED as moot. Respondent's first motion to dismiss, ECF No. 10, is DENIED as moot. Petitioner's motion to vacate, ECF No. 21, is DENIED for lack of subject matter jurisdiction.

The Clerk of Court is directed to enter judgment and close this case.

Dated: June 25, 2024
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York